Last case this afternoon is 410, 1070, 1025. People v. Richter. For the appellant is Mr. Peterson. For the appellate is Ms. Brooks. Counsel, I want to mention we always ask counsel to get here early in case we are able to start early. You both did that, and I want to thank you for doing it so we could move our schedule along. Mr. Peterson, may we proceed? Thank you. May it please the court. Counsel. Counsel. This is an appeal from Mr. Richter's conviction for the murder of Dawn Marquis. Mr. Richter was denied his right to a fair trial by the improper admission of unsworn, unconfronted, and unreliable out-of-court statements from beyond the grave. The evidence at trial established that Bill and Dawn had been together for 16 years. They had two children. But in the summer of 2008, Dawn moved out of the family home. There's no question the separation was acrimonious. She was having an affair. Bill was jealous. The couple was arguing over custody of the two teenage children. A couple of weeks after Dawn moved out, she was shot and killed in the driveway of the Richter residence by Joe Hoffman. Hoffman was Bill's best friend, his business partner. Hoffman lived behind the Richter home in a trailer. Following the shooting, Hoffman fled to Florida, where he was subsequently arrested. In statements to the authorities, he admitted that he had committed the murder and claimed sole responsibility. It was only later, in an attempt to ingratiate himself with the authorities, that he claimed that Mr. Richter had made him kill Dawn. Now, Hoffman testified for the prosecution at trial, but he could not recall his post-arrest statements. He explained that his memory was fuzzy. This should not be surprising, because Hoffman was a 50-year-old alcoholic who dropped out of school in the 8th grade, and by all accounts, had drank 30 beers or more a day ever since. Hoffman's post-arrest statements were introduced via tape recordings, and he testified at trial that he had shot Dawn pursuant to Bill's instructions. He was impeached with testimony from three of his cellmates, each of whom testified that Hoffman told them that Bill had nothing to do with the murder. Now, aside from Hoffman's testimony, the prosecution's star witness was Dawn Marquis, who, in the words of the prosecutor, testified from beyond the grave. Prior to her death, Dawn told everyone, and those are her words, she told everyone that Bill was going to kill her. And these out-of-court statements were admitted pursuant to 115-10.2A of the Procedure Code, which regards statements of unavailable declarant in domestic violence prosecution and admits those statements under certain circumstances, including circumstances where the prosecution is required to prove that the statements are both reliable and necessary to the prosecution. The state failed to meet either of those requirements. In terms of reliability, the statute requires circumstantial guarantees of trustworthiness that are equivalent to those contained in other hearsay exceptions. And, of course, the basis for these exceptions are that the statements are given under circumstances that would eliminate the possibility of fabrication. And important factors to consider in that regard include spontaneity and lack of motive to fabricate. Here, it's clear that Dawn's statements were not spontaneous. They were premeditated and deliberate. She told everyone. How can you say they were spontaneous? Yes, she did tell everyone, all right? But it seems to me that logic would dictate that in this kind of a situation where you've got a separated person going through a breakup, custody fight, you know, all the panoply of emotions that go through that, she would tell people that he's going to get me or he's going to kill me, whatever like that. But not sit back and say, well, I'm just going to make this up and deliberately say these things to all these different people. That doesn't jive with common experience. Well, that's why it's so important that the defendant be given an opportunity to cross-examine to determine if that's exactly what occurred. And that's a separate point. I get that, okay? But your characterization of her statements is, you know, over a two-week period having set in motion a plan to say to everybody she ran into, he's going to kill me. That doesn't seem to make a whole lot of sense. When the cases talk about spontaneity, they talk about backup time for reflection. And if she's going out and telling people she's going to make these statements, she's had time to reflect on those statements and potentially advocate those statements. But you seem to be suggesting that making these statements would be part of a potential plan on her part if there was going to be a custody battle between her and your client. Perhaps. There could be any number of reasons, but that's the point we don't know. Well, what I wanted to ask you is this. Let's assume for the moment that she wasn't killed, and in fact there was a custody fight developed over who should be the custodian of the children. And you were representing Dawn, and you wanted to elicit her statements that she had made that are at issue here, and the various people she had made them, and Ms. Brooks, representing Mr. Richter, says, I object, Judge. These are prior consistent statements and not admissible. What would be your response? Is Dawn at the proceeding? Yeah, she's at the proceeding. She's testified. She said, she's testified to all these things, and then she says, and I told X, Y, and Z about it. Ms. Brooks objects to that. Is that a prior consistent statement and admissible? I hesitate to answer this. I haven't really researched the issue of prior consistent statements. You're pretty knowledgeable on the subject, Mr. Peterson. I think that's more modest than you need be. Let me put it this way. It strikes me as a prior consistent statement, and just where, for the theory that a witness and the witness stand can't bolster his or her testimony by saying, not only is this what happened, but I told him that's what happened, too. That's pretty much prior consistent statement, and that's why it's not admissible. Isn't that true? In the civil proceeding, but that's not admissible here. Pardon? But it wouldn't be admissible here. Well, I'm talking about the civil proceeding, and it wouldn't be admissible for the third party to take the stand and say, yeah, this is what Dawn told me, when it's more prior consistent statement. The reason I mention that is because it's not at all clear to me how this, the motive. I don't understand the basis of your claim that Dawn's telling this to people somehow going to be to her advantage if there's subsequent litigation. What was the last part of your question? If there's going to be litigation on who should be the custodial parent of their children, why Dawn's telling this to people is going to help her case, and I just don't see how that follows. Well, perhaps not. But, of course, the prosecution's theory was that she was telling everybody so that this evidence would be available at trial in the event of her death, and perhaps that is the more pertinent point to be made here. So it's not reliable because if, in fact, he kills me, you'll know he was the guy and this undermines the reliability of it? Well, it's not reliable, for one thing, because she did have a motive to testify falsely. What is it? What's your motive to testify falsely? She wanted to portray Bill as a bad guy. To what end? For the ends that they were going through, not only a custody dispute, a property dispute. They both wanted the kids. They were both throwing out these assertions and declarations. You know, in these acrimonious divorce proceedings, there's motive on both sides to portray the other person in a bad light. You also say that there's no need for these statements. So if the statements weren't admissible under the statute, what would the state's case consist of other than the first-person testimony of Hoffman, which you pointed out was substantially impeached, and he sounds like, short of impeachment, may have been not the most credible guy. The state presented other evidence which would be sufficient to sustain the conviction against the reasonable doubt claim under Jackson v. Virginia. What was the state's case going to be? Statements from witnesses that Mr. Richter was very jealous of Don, that he was following her, that they were having a dispute over who was going to get custody of the kids. All these were given by the state as reasons for him, or motive for him to kill Don Marquis. That, combined with Hoffman's testimony, viewed in the light most favorable to the state. Other than Hoffman, who testified besides Don's hearsay statements that the defendant threatened to kill her? I don't think anybody testified that he threatened to kill her, but there was certainly testimony from which a prior fact could infer that occurred. There were friends of his from the garage that testified to statements they heard him make, saying that he wanted Joe to do something about Don. Now, I submit the cumulative effect of these statements, of which there are many, and they're documented ad nauseum in the briefs. The cumulative effect from the unsporn statements, the prosecutor's emphasis and opening statements, his reliance on the statement and closing argument, the pervasive nature of this hearsay testimony precluded any possibility of Mr. Victor obtaining a fair trial in this case. The state argues that the heir was harmless. But to your question, Justice Steigman, aside from the impeached testimony of Hoffman, the prosecution's star witness was Don Marquis, whose reliable, unreliable, and unconfronted accusatory accusations were improperly admitted. Now, an essential component of harmless error analysis is the importance of improperly admitted evidence to the state's case. And here the state, based on the prosecutor's reliance on the statements in opening and closing and throughout the trial, the state cannot deny that Don Marquis' out-of-court accusations were an integral part of the prosecution's case. What's the standard of review regarding whether the trial court correctly applied the hearsay statutory exception? Abuse of discretion, Your Honor. So that's what we would have to conclude? We would have to find the court abused its discretion by admitting these statements. That's correct. Now, even aside from harmless error analysis, there's the defendant's right to a fair trial. And every defendant, whether innocent or guilty, is entitled to a fair trial. And in determining whether that right has been compromised, the Supreme Court held that the court should employ the same test as employed under the second front of the plain error rule. And that question is whether a substantial right has been affected. And here certainly it's a fundamental right to cross-examine the witness against him. And whether it's been affected to such a degree that the court cannot confidently state that the defendant was. You seem to be melding the statutory argument into the Confrontation Clause constitutional argument at this point. Well, not yet. This isn't an alternative to the whole harmless error analysis. In this case, the evidentiary issue is preserved. And the issue is whether it was abuse of discretion and then whether it was harmless. But there's a third issue that's not often discussed in most cases. It was discussed, for example, in People v. Blue, a Supreme Court case. And in that case, the court said that the prejudice to defendant's case is not the sole concern of the reviewing court. Defendants, whether guilty or innocent, are entitled to a fair trial. And in determining whether that right is compromised, the same standard is under the second front of the plain error rule. And in that case, the court held that cumulatively the errors created a basic pattern of unfair prejudice to the defendant's case. And I would submit that the same situation applies here. Now, turning to the Confrontation Clause claim, of course, Crawford held that the Confrontation Clause applies only to testimonial statements. And in Steadley, our Supreme Court stated the pertinent inquiry is whether the In other words, would an objective person in the declarant's position have anticipated that her statements likely would be used in a court proceeding? And here, the prosecution's own theory was that Don Marquis' specific purpose was to ensure her accusations would be available in the event of a trial. The prosecutor stated in the closing argument, and this is quoted in the brief, and I quote, In a murder case, we don't always have evidence coming from the mouth of the victim. But in this case, Don Marquis testified to you from beyond the grave. And thank God she had the foresight to tell these other people what she knew. Thank God that she revealed the defendant's threats and his intent to have her killed before he actually did it. Let's say under these circumstances, where the prosecutor avowed to the jury that Don Marquis was testifying, it is inconsistent and inappropriate for the state to now claim that Don Marquis did not bear testimony against Mr. Richter. Does it matter, Mr. Peterson, if the individuals she's making the statement to are private individuals versus government officials? Well, certainly if it's given in response to police interrogation, the court has ruled that these are testimonial statements. But in Speckley, our Supreme Court held that that's not necessarily required. It depends. And they set out this test here where the reasonable person had expected her statements to be used in a court case. Now, this claim was not preserved for review, a confrontation claim, and I would urge the court- Speckley was decided before Davis, was it not? You got me there, Justice Steigman. Speckley was a plurality decision. It was a plurality decision. Has this language from Speckley you've just cited to us ever been cited again or said again by the Supreme Court of Illinois? Well, it hasn't been overruled. I think it's the law. What are plurality decisions worth? Well, it's- Especially before Davis and especially the Davis and Hammond two cases. Just as binding precedent until the court rules otherwise. And I would state again, as I said before under the second prong, here the unconfronted accusations permeated the proceedings and undermined the fairness of the trial. Well, what about going back to Justice Pope's question, why should statements made to non-governmental officials, grandma, the neighbor next door, visiting a relative, is that what, as Justice Scalia has explained it, the Sixth Amendment was concerned with, which resulted in Sir Walter Raleigh's conviction? I know you're familiar with all his analysis. No, it seems to me that this is pretty far afield, Mr. Peterson. Certainly, casual statements to grandma would not be testimonial. But the question comes down to, did she intend to bear testimony against the accused? And I think the record's clear. So the statement to grandma, if it's not a casual one, then fits? Justice Stein, every case must be decided on its own facts. You also are familiar, I'm sure, with legal scholarship in this area and with Professor Graham's take on this subject. And Professor Graham writes that the sooner Illinois law conforms to the universally held view that statements to non-governmental officials are never testimonial, the better. All in italics, by the way. The only such sentence, I think, in his 1,200-and-some-page book where that's done. How did he go so wrong, Mr. Peterson, as to not understand that statements intended to grandma to be testimonial don't fit? Well, we have some unique circumstances in this case. And we have a declarant who's going around telling people the facts and circumstances leading up to her claim that the defendant's going to kill her, just as if she was testifying at trial. And she's doing it for the purpose, and this is the state's own theory, she's doing it for the purpose that those statements will be available at trial in the event of her death. Mr. Peterson, is it just an amazing coincidence that she's actually murdered in the defendant's driveway? Here she is telling all these people, if I'm found dead, it's because of him. He's either hired somebody to kill me. I don't think he'll kill me myself, but he's got somebody. And she ends up dead in his driveway. That's a major coincidence. Yeah, but that doesn't say anything about the reliability of her statements. I mean, that type of analysis was rejected in Idaho v. Wright, the type of just because an unreliable statement is corroborated by other facts or certain trustworthy evidence, it doesn't allow that unreliable statement to piggyback on the backup reliable evidence being produced at trial. The question here is whether the statements were reliable. And to answer that question, we have to look at the facts and circumstances surrounding those statements, not the other evidence presented at trial. Thank you, Mr. Peterson. You'll have an opportunity to address this again. Ms. Brooks? May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. I usually don't like to talk about forfeiture because it's kind of a boring topic, but it's kind of an important issue in this case because when the state does rely on a harmless error analysis on the merits of the evidentiary issue that the defendant raises with respect to the application which is statutory, the defendant also raises a constitutional claim which is not preserved. And of course there are different standards for harmless error depending on whether an issue is of a constitutional nature, which is a more stringent standard, or merely an evidentiary standard. And because when an error is not preserved for review, it becomes then the defendant's burden to show the prejudice rather than the state's burden for preserved errors to demonstrate and persuade the court that it's actually a harmless error and therefore the conviction should be affirmed. So for that reason it is important to recognize that from my review of the record, at least I saw that it looked like only the reliability, which is the argument that there was enough trustworthiness under the statute, was the issue that was relied upon both in the trial court and on appeal. Another issue with Lowe was whether this was a domestic violence prosecution, which is not asserted here. So that the other arguments though, whether it's material, if there's enough probative value, interest in justice, necessity, if those are not urged below, then the specific objection below on the ground of trustworthiness, reliability, waives or forfeits, all the other objections, as well as the fact that the defendant's reply brief exclaims that this court can disregard the forfeiture of the constitutional claim because challenges to statutes can be raised at any time, although this is not a challenge to the statute under which the defendant is convicted. It's not a challenge to the constitutionality of the first degree murder statute. So that rule doesn't apply in this context and the other cases do show that constitutional issues, such as confrontation clause issues, can be forfeited if not objected to on that basis below. So for that reason, my harmless error argument will actually apply to the Nevitt standard. And because it's the defendant's burden to show that there was plain error, it doesn't seem that the defendant has really adopted that burden very well by making a very brief reference to plain error in pages 5 and 6 of the reply brief. And because the defendant doesn't actually develop that argument, it should be deemed forfeited on appeal. So with respect, and also I noticed that the defendant's citing Blue, which was a case dealing with cumulative effects of errors denying a fair trial under Second Pond Plain Error, and again I haven't seen a reference to Blue in the brief, and the defendant can't be citing new cases on appeal for the first time without giving the state an opportunity to respond. So that should be forfeited as well. Now back to Nevitt. The standard for evidentiary error is, I quote, no reasonable probability that the jury would have acquitted the defendant absent the hearsay testimony. If there was ever a case where something was harmless, like in Patterson, where despite being circumstantial, it was an overwhelming case. And here the, albeit impeached, testimony of Joe Hoffman was overwhelmingly supported by the circumstantial evidence. And the defendant mostly cites the amount and importance of what he deems to be the importance of the hearsay evidence, but doesn't really respond to the lengthy amount of evidence that the state cites in this brief, which connected the defendant to this crime. And as I analyzed in my brief, pretty much everything about this case points to the defendant's guilt, because, and it's not being rebutted by the defendant here on appeal. He's not objecting or saying, well, this particular aspect of evidence doesn't really incriminate him, because he's not really disputing that. And so I'd like to very briefly highlight... Well, Mr. Peterson would respond that even guilty people are entitled to fair trials. If he had argued that in his brief, that would be a point that he could argue, but he's forfeited that point. But even then, a case like Blue, which from my recollection, from having briefed other cases, was a case where there was a bloodstained policeman's uniform. It was very shocking. It was a direct appeal to the juror's emotions. Here we have threats. Threats that were actually duplicated in some respect by Amanda Carter, one of the daughters, had overheard the defendant on the phone threatening to shoot Dawn dead the next day that he saw her, which was two days later. And in fact, she was in fact shot dead in the driveway the next time that she went to the defendant's house. So in some respect, even if this were a Patterson-type constitutional harmless error standard, not only is the other evidence overwhelming, absent the hearsay that there's been an objection to, but it also is duplicating a lot of the properly admitted evidence so that it's not something... If you take away the hearsay, now what do you have? It's a situation that there was other evidence of threats in the record that were not objectionable as hearsay. So therefore, there's not the level of prejudice involved. And I'd like to very briefly, because it is the state's burden showing harmless error, it is important to address some of this evidence. Everything about Joe's unusually dependent relationship with the defendant, it showed that Joe Hoffman lacked the means and also the motive to commit this crime on his own. He wouldn't have been able to do it without the defendant's assistance and also his help. Joe is not just a simple business partner. He was very dependent on the defendant and in some ways almost treated like an animal. He had to use a bucket for facilities, lived in a very bare camper, and basically did everything that he was told, and was actually physically abused sometimes by a defendant who was actually a larger size than he was. And he was heavily addicted to substances, and that made that his continuing access to those substances were very vital. And even one of the defendant's things that told him was, I can't do this because you'll be out and nobody will be able to help you. But if you do this in prison, I can still help you out from the outside. Which is also another reason that explains why Joe Hoffman did not want to incriminate the defendant until after Joe Hoffman had met his sister, Joe Hoffman's sister, in jail after his arrest and was convinced to tell the truth finally. The defendant had financial motives, trying to sell cars, he owed debts, he was asking afterwards to try to get the life insurance and get a death certificate. His obsessive stalking behavior, he couldn't stop thinking about Dawn leaving, and wanting to keep the kids. There's comments to Ilberry, to Mardis. Mardis was almost as important a witness as Joe Hoffman, and wasn't as impeached as significantly. And most importantly, perhaps, is the very chilling remarks that he made to Corey Marquis, who was a prison inmate. And because he was in prison, and there is a recording that says, basically that you know that you're being monitored, this is not eavesdropping, but these recordings were made of the defendant's voice making all kinds of comments about going in the grave and shooting other people and having somebody else watch the kids, basically. That it looked like there was going to be a murder-suicide situation from his perspective. And it also gives some insight to his development. Originally he thought that Dawn Marquis was just simply, it's not an affair because she's actually terminating the relationship. They were never married. But because she's now wanting to go with another man, Sonny Tulop, who's from Plow. And what happens is, the defendant eventually realizes that maybe Dawn's at fault here. And that's an important development. Because originally he was just going to go beat up Sonny and try to get him to stay away from Dawn. And realizes it's actually Dawn's fault, from his perspective, for the breakup. And he's not going to want to beat up Sonny, he's going to want to kill Dawn and keep the kids and all the stuff that he's accumulated in the relationship. And then there is also, the timeline is very key. What happens when he's delaying Crystal to go outside, because she's got to be the first one to discover the body, or they might think that he did it. So he's holding her inside, he's got the monitors, he can see the car in the driveway by inference. And he's got the loud movie going, Harry Potter, you can't really hear outside. And then he gives her junk mail, there was a Fingerhut catalog, and that was made a lot of importance of at trial. And so it's not really important for her to get this mail. But it was important for the defendant to delay her, Crystal, from getting outside until Joe had enough time to complete the deed and get away. So is your argument that the evidence was so compelling that the court's error was harmless? Most definitely harmless. But the statements were wrongfully admitted? I'm not conceding, Your Honor, that the statements are wrongfully admitted, but simply if the evidence, if the hearsay was in fact harmless error, under the standard that I've mentioned, then this court does not need to actually consider whether, for example, especially the constitutional question. This court would not reach the constitutional question because constitutional issues are disfavored. But the similar analysis can apply to the evidentiary issue. It does not need to be resolved by this court if this court is persuaded that the state has met its burden of showing that any error would have been harmless. What's your position on the merits? Okay, I'm sorry, Your Honor. As to the merits, other objections are forfeited except for the trustworthiness. There are eight factors in Thomas that were identified as to what is trustworthy for purposes of a similar statute. Now this statute was sort of like pulled out for domestic violence prosecutions, but it's essentially the same statute. There's just a little bit of a change in terms of the availability. But that's why Thomas is relevant. This was not made under oath. So number one factor is actually cutting against the state. But the other factors appear to cut in favor of the state. With respect to Dawn Marquis' personal knowledge, she's a declarant. She's got personal knowledge of the defendant's threats. Factors about the declarants, there's nothing that shows that somehow because of who she is that she should be disbelieved. The declarant's mental state, she was under great pressure. There's the breakup. There is the fact that she almost knows that her demise is inevitable. She knows she has nothing to lose. She's trying to make these comments. And then factor four, that shows that that makes it more reliable. And with respect to number five, there's no claim of leading or suggestive questioning. So number five cuts in favor of the state. Circumstances of the statement. There's no showing that this is somehow declarations made long time after the events, where she essentially gets a new threat and then calls her lawyer and leaves a message or talks to her coworkers as soon as she gets back to work. So there's not a lot of time for fabrication. So that's really kind of more of a neutral factor. Although the defendant claims that there was a lot of time to fabricate the defendant's position. Number seven is, here there's no question really that the statements had been made. In fact, some of these statements are actually on recordings. The one to the prison, to her son Cory. Her messages or text message and phone message to the attorney. Some of these are recorded statements. I don't think there's any doubt that she made these statements. I don't think the witnesses came in and lied about the statements or that she made statements to them. Exactly, Your Honor. That's factor number seven. Okay. But what I'm getting at is, on the merits of the issue, you say they waived the Crawford argument because they didn't make that argument in the trial court? Yes, Your Honor. So let's say they did preserve it. Is there a Crawford violation by allowing all these statements in? Well, to answer your question, no. And the reason why is because none of these statements are testimonial. And really it should be one reason why the defendant's forfeiting. Can I ask you this though? It seems to me if she's saying these statements to people so that they know who killed her, she's intending that they'll be able to come in and testify to her statements. So in that sense, to me, they are testimonial. But in the Crawford sense, do you agree or disagree with the statement that only statements to government officials that are testimonial in nature violate Crawford? Not necessarily, but in practice it may be close to that. And the reason why is because Stekley is the case that does, sort of like at least in this one aspect, doesn't really set new grounds. It refers to the two requirements for something to be testimonial. And it says, quote, I quote, first it must be made in solemn fashion. And then it refers to the second requirement, whether the statement was, quote, intended to establish a particular fact. And the defense analysis cites the part of Stekley which talks about whether it was intended to establish a particular fact. Essentially, the defense argument here is if Dawn Marquis had intended to bear testimony, therefore she was testifying. She was a witness who was testifying. And that is not the case because essentially the defendant overlooks requirement number one, it must be made in solemn fashion. And Stekley refers to the Davis opinion. And in Davis, there was actually a dispute. It was not a majority opinion. There was a dispute as to whether the statements in Davis were solemn. And the reason why is because one of them said, well, it's solemn because there's severe consequences to lying to police. And the other said, no, there has to be at least more than that. How about a higher degree of formality, such as maybe the defendant was mirandized by the police, not just simply talking to police and therefore could be conceivably prosecuted for making a false statement to a police officer. And in a case where there is not a similar degree of formality, such as no consequences, which is even lower than the most lenient standard in Davis for solemnity, there's no showing in here that any of these statements were solemn. And as I was going to point out, one of the problems with the defense brief and the forfeiture issue is the defendant doesn't actually go through every single statement. They list all the statements, but they don't analyze every statement. They don't analyze every statement and say how does this not comply with what part of the statute and how is this statement testimonial, next statement. Essentially, there's a failure to analyze that, but it doesn't matter in the sense that even the state's position is every single one of these statements was not made to a police officer and therefore there's no showing that there were consequences, severe consequences, according to Davis, that are similar in nature to why this should be deemed as equally solemn as if she was telling a cop, I'm trying to make a complaint here because my ex-boyfriend is threatening my life. And if that was false, then she's guilty of at least a misdemeanor, maybe a felony. So it's not a similar situation. And it's not a situation also that the solemnity requirement can just simply be disregarded. Just because Dawn thought she was potentially making statements that were potentially going to be used in a trial, even though she thought from her perspective the defendant was going to kill himself. So what trial or prosecution was she thinking about? But essentially, solemnity cannot be disregarded. It was essentially brushed off in the defendant's brief. And because it's an independent requirement, it's one of two requirements. Steckley says, first and second. And they're analyzed in separate paragraphs and parts of that opinion. And it cannot simply just be disregarded. So therefore, it's not a testimony statement. But essentially, the eighth factor for the statute on trustworthiness is whether the declarant reaffirmed her statements or whether she ever recanted. And here there's no showing that she ever recanted. In fact, she's actually reaffirming these statements every time she talks to somebody else. So it seems like seven of these factors are at least neutral or cut in favor of the prosecution. Only one factor would be not, which is the fact that these were never under oath. So for that reason, this court cannot rule that there is an abuse of discretion in ruling that these were sufficient circumstances of trustworthiness to admit under the statute 115-10.2a. And as I said, with respect to the other elements of the statute, if they're not raised below, they're forfeited, then it has the burden then of showing plain error. And I don't see that in the brief. I don't see a claim that the evidence is closely balanced, nor could that claim really be made here. And if it then gets down to the second prong of plain error, would this evidence be so damaging that an objection could not be sustained or that a remedy would be necessary to preserve the reputation of judicial process? So it's very tough standard to meet, the second prong of plain error standard, and it has to be applied in only rare and extreme cases. In this case, it's not one of them. And with respect to the overwhelming evidence, one of the most important things, and they're small things, is the defense retching and calling for a police officer when he thought maybe she was just having a seizure. It betrays his knowledge that he knew she was shot and he knew that police wouldn't be needed at the scene. Well, no one else really knew what was wrong with her. And the timing of 911 calls, he comes into the house and shuts off, takes the battery out of the track phone. This was a prepaid wireless phone that Joe was using. Well, he's got to do everything he can to make sure that police are not led on Joe's trail. So that's kind of something where he wouldn't necessarily be wanting to do that right away, like within a couple minutes of making a 911 call at the scene. The defense interview was very uncooperative. In fact, he was objecting vehemently to the police suggestion that they were going to talk to his children. Why? Because he knows that the police are going to find out about Joe, the guy who lived in the camper. What did he do with the camper? He burned it down, even so desperately that he created an illegal fire to do so, and made admissions to Tony Harris, the person he hired to help him, that he wanted to make sure that nothing got linked back to him. So, again, it's not just simply Joe Hoffman's word here. There's Tony Harris, there's Ilberry, there's Mardis. There's all of his admissions on the recording. And what happened to the guns? He had guns, now they're gone. Well, it's obvious, you know, he gave them to Joe to commit the murder. So, for these reasons, it's a situation where this court does not have to reach the merits of whether the statute was complied with. Simply rule that these were harmless. The state has met its burden of showing harmless error. Every other claim was forfeited by the defendant, either for failing to object below or sufficiently brief the argument on appeal. And I would entertain any questions. Thank you, counsel. Mr. Peterson, any rebuttal, sir? I'd just like to make one point regarding the confrontation claim. And the counsel is correct. In Steckley's discussion of Davis, the court refers to two components of a testimonial statement. Solemnity and the intent to establish a particular fact. And our Supreme Court in Steckley concluded that both those factors are present when the declarant intends to bear testimony against the accused. And as far as solemnity, I'd also point out that the state, in its brief on page 6, describes Don's out-of-court statements as the claims of someone who spoke under a valid and genuine fear of imminent death. That is a solemn statement. Are there any further questions? Well, I'm curious as to the extent solemnity is a factor. What does that mean? Did you address it in your brief? I did. Saying what? Saying Steckley recognized these two factors, and the Supreme Court held that both factors are present when the declarant intends to bear testimony against the accused. Just as if she's testifying in court, it's a solemn statement. She's aware of the consequences of her accusations. So how does solemnity differ from the other element that they talked about? The intent to establish a particular fact. Well, here it's clear she intended to establish that Bill was going to kill her. And she's making these statements according to the state under fear of imminent death. So I would submit it's a solemn statement for the purpose to be used in court. And she was bearing testimony against the accused. Okay. Thank you very much. That's all. Thank you, Mr. Randolph, for your advisement. Be in recess.